## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

BETTY WASHINGTON,

    Plaintiff,

v.

                                        CASE NO:

CASE MANAGEMENT, INC. and
VISION HR II INC.,

    Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW**, the Plaintiff, BETTY WASHINGTON, by and through her undersigned counsel, and, by way of this Complaint, seeks relief against Defendants CASE MANAGEMENT, INC. and VISION HR II INC. for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) *et seq.* ("Title VII"), the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01 *et. seq.* (the FCRA"), and 42 U.S.C. § 1981 ("Section 1981").  In support thereof, Plaintiff states as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Betty Washington ("Plaintiff" or "Ms. Washington"), is an adult female citizen and resident of the City of Jacksonville, Florida. At all times relevant hereto, Plaintiff worked for Defendants in Volusia County, Florida.

2. Defendant, Case Management Inc. ("Defendant CMI" or "CMI"), is a Florida corporation, which has its headquarters in Port Orange, Florida and conducts business in Daytona Beach, Florida.

3. Defendant Vision HR II Inc. ("Defendant Vision" or "Vision") is a Florida corporation, which has it headquarters in Daytona Beach, Florida and conducts business in Daytona Beach, Florida.

4. Defendant CMI is, and has been, a covered employer within the meaning of the Title VII, and the FCRA.

5. Plaintiff was a covered "employee" of Defendant CMI within the meaning of Title VII and the FCRA at all times relevant herein.

6. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, 28 U.S.C. §1367, 42 U.S.C. §2000e(5)(f)(3), and 42 U.S.C. §1988(a).

7. A substantial part of the acts complained of herein occurred in Daytona Beach, Volusia County, Florida. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

8. Ms. Washington's race is Black and she is African-American.

9. On or about August 8, 2016, Ms. Washington was hired to work as a case manager at CareerSource Flagler Volusia located in Daytona Beach, Florida. Upon information and belief, Defendants were contractors to CareerSource Flagler Volusia during the times relevant hereto.

10. At all times relevant herein, Ms. Washington was directed in her work by the owner of Defendant CMI, Ms. Kathy Spencer, Caucasian, and Mr. Jesse McGee, Caucasian, was Plaintiff's direct supervisor. Plaintiff Washington's annual W2 form showed that she was paid by Defendant Vision.

11. At all times relevant herein, Ms. Washington was experienced in the social work field, holds a Master of Business Administration degree and a Master of Public Administration degree, and was a seasoned professional in the field of welfare participant transition programs.

12. At all times relevant herein, Ms. Washington worked in a professional and competent manner at CareerSource Flagler Volusia receiving good performance evaluations by Defendants.

13. Despite performing successfully in her role as a case manager at CareerSource Flagler Volusia, Ms. Washington was treated negatively in the terms and conditions of her employment in comparison to non-Black employees who were similarly situated to her.

14. Ms. Washington was excluded from promotion opportunities in favor of Caucasian employees, despite Ms. Washington having more experience and skills than the promoted employees. For example, Plaintiff met with Ms. Spencer at hire and Plaintiff told Ms. Spencer of Plaintiff's desired salary. In response, Ms. Spencer assured Plaintiff that if she accepted the position at a lesser salary she would promote Plaintiff and increase her salary by October 2016. When that did not occur, Plaintiff met with Ms. Spencer in November 2016, about the agreement concerning a raise and a promotion, and Plaintiff received a minor increase to her salary, although not what was discussed at hire, although she received no promotion. Instead, Plaintiff was told that if she was not happy with her job, Plaintiff could resign. However, at or about the same time, a Caucasian employee of Defendants turned in her resignation and Ms. Spencer promptly rescinded the resignation and gave the Caucasian employee a large pay raise, which that employee went around bragging about in the workplace. Plaintiff was more qualified and experienced than the Caucasian employee that received the pay raise.

15. In early 2017, Plaintiff was the victim of domestic violence issues and required time-off from work. Plaintiff was harassed by Defendants' management about documentation of time taken off due to the domestic violence situation and Plaintiff's related hospitalization and was not offered domestic violence leave as allowed for in the Defendants' employee handbook. However, a Caucasian employee who had numerous customer complaints, verbal warnings, write-ups, altercations with several employees, several "no call no shows", was often late to work, and who had been out of work more than two weeks at a time, was not required to turn in any documentation by Defendants. Additionally, that same Caucasian employee was not terminated at the time Plaintiff was told by Defendants' management that layoffs were necessary in July 2017.

16. On a persistent basis in the workplace, Ms. Spencer and Mr. McGee harassed, intimidated, and created a hostile work environment for Plaintiff on account of her race. For example, Plaintiff's supervisor, Mr. McGee, would regularly humiliate, threaten and bully Plaintiff in the workplace by yelling, cursing, and verbally abusing Plaintiff concerning her work and by wanting Plaintiff to break policy and procedures. Mr. McGee called Ms. Washington a "Bitch" on occasion in the workplace, although he did not treat Caucasian employees in the same manner, and singled out African-American women for this treatment. Plaintiff reported this discriminatory behavior on more than one occasion to Ms. Spencer and other management, but the harassing behavior did not cease. Instead, it became clear that Mr. McGee was aware of Plaintiff's complaints concerning discrimination and his behavior continued.

17. On other occasions, Defendant's management would critique Plaintiff's work and seemingly intentionally use incorrect facts. For example, in March 2017, Defendants' manager Morella Thompson accused Plaintiff of passing off certain responsibilities to other employees. However, Plaintiff did not do what she was accused of or anything like it.

18. Furthermore, during times in 2016 and 2017, Ms. Spencer and Mr. McGee would accuse Plaintiff of stealing gas gift and bus cards of the organization that would go to case clients despite no evidence of the same. This behavior directed to Plaintiff was discriminatory and harassing on account of race as there was no evidence of any theft, and Plaintiff had to repeatedly submit documents that were previously turned into Ms. Spencer and Mr. McGee to demonstrate her innocence. This was never something Caucasian employees were accused of. Instead, other African-Americans employees were also singled out for wrongfully treated by Ms. Spencer and Mr. McGee, while Caucasian employees were not.

19. African-American employees were treated differently by Defendants in the workplace than Caucasian employees about their work attire. For example, Caucasian employees were allowed to wear whatever they felt like in the workplace, including shorts, spaghetti string tops, tennis shoes, which are against company policy, while African-American employees were required by Defendants to strictly adhere to the work attire policy.

20. On or about July 20, 2017, Ms. Washington was told by Ms. Spencer and Mr. McGee that she was being terminated immediately, allegedly due to a layoff. However, a Caucasian employee in the same position as Plaintiff had just been given a raise and promoted and Defendants had also just hired additional Caucasian case managers who were without the job knowledge of Plaintiff.

21. Additionally, Ms. Washington learned that two or more Caucasian employees allegedly laid off by Defendants, who received a notice period and severance, were apparently rehired shortly after Ms. Washington was terminated. Furthermore, Ms. Washington was not offered any position for rehire by Defendants at anytime, or any notice or severance at the time of her termination.

22. At or around the time of her termination, Ms. Washington communicated to the CEO of CareerSource Flagler Volusia, Ms. Spencer, Mr. McGee and three different human resource employees of Defendants that Plaintiff believed she was being terminated on account of race discrimination and retaliation. Plaintiff's objection to the discriminatory treatment was also made to a manager of Defendant Vision. Plaintiff received no response to these objections of discrimination in the workplace.

23. Prior to her termination, Ms. Washington had been given no indication by Defendants or anyone else that her job was in jeopardy.

## ADMINISTRATIVE PREREQUISITES

24. Plaintiff timely dual-filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") for discrimination and retaliation (referred to herein as the "Charge"). The EEOC charge number assigned to Plaintiff's Charge was 510-2019-002400.

25. On September 21, 2020, the EEOC issued and mailed a Notice of Right to Sue to Plaintiff. Plaintiff has filed this Complaint within 90 days of her receipt of the Notice of Right to Sue.

26. More than 180 days have passed since the filing of Plaintiff's Charge, and no determination has been issued by the FCHR.

27. All administrative prerequisites, if any, have been met for each claim brought in this Complaint, and each such claim is timely brought.

## COUNT ONE
**(Claims Against Defendants for Violation of 42 U.S.C. §1981 – Race Discrimination)**

28. Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1- 23 above as though set forth fully herein.

29. Plaintiff is African-American and was employed by Defendants during the time period relevant herein.

30. During Plaintiff's employment, Defendants, by and through their owner, agents, officials and/or employees, unlawfully discriminated against Plaintiff because of her race, in violation of 42 U.S.C. § 1981, by, among other ways, subjecting Plaintiff to disparate terms and conditions of employment and adversely affecting Plaintiff's working conditions by, among other ways, harassing behavior on account of Plaintiff's race, denying her opportunities for promotion and career development in comparison to Caucasian employees; and failing to take prompt remedial action to stop the racially based discriminatory treatment to which Plaintiff was being subjected.

31. In addition, Defendants terminated Plaintiff's employment because of her race, in violation of 42 U.S.C. § 1981.

32. Plaintiff was injured and negatively affected because of this discriminatory work environment, and because of her discriminatory termination.

33. The acts and omissions committed by Defendants and their owners, agents, officials and/or employees were willful, wanton, intentional, conscious and malicious and in deliberate disregard of Plaintiff's civil rights.

34. As a direct and proximate result of Defendants' actions, Plaintiff has suffered lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, embarrassment, and health-related problems justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory, consequential and punitive damages against Defendant.

## COUNT II
**(Claim Against Case Management Inc. for Violation of Title VII (42 U.S.C. §§ 2000e *et seq.*) – Race Discrimination)**

35. Plaintiff incorporates by reference herein and realleges the allegations in Paragraphs 1 – 27 above as though set forth fully herein.

36. During Plaintiff's employment, Defendant CMI, by and through its owner, agents, officials and/or employees, unlawfully discriminated against Plaintiff because of her race, in violation of Title VII, by, among other ways, subjecting Plaintiff to disparate terms and conditions of employment and adversely affecting Plaintiff's working conditions by, among other ways, harassing behavior on account of Plaintiff's race, denying her promotion and career development in comparison to Caucasian employees; failing to provide support in Plaintiff's career development given to similarly situated Caucasian employees; and failing to take prompt remedial action to stop the racially based discriminatory treatment to which Plaintiff was being subjected.

37. In addition, Defendant CMI terminated Plaintiff's employment because of her race, in violation of Title VII.

38. The acts and omissions committed by Defendant CMI were willful, malicious and in reckless disregard of Plaintiff's federally protected civil rights.

39. As a direct and proximate result of Defendant CMI's discriminatory actions, Plaintiff has suffered and will continue to suffer lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, and compensatory damages against Defendant CMI.

## COUNT III
### (Claim Against Case Management Inc. for Violation of Florida Civil Rights Act (Fla. Stat. §760.01 *et seq.*) – Race Discrimination)

40. Plaintiff incorporates by reference herein and realleges the allegations in Paragraphs 1 –27 above as though set forth fully herein.

41. During Plaintiff's employment, Defendant CMI, by and through its owner, agents, officials and/or employees, unlawfully discriminated against Plaintiff because of her race, in violation of the FCRA, by, among other ways, subjecting Plaintiff to disparate terms and conditions of employment and adversely affecting Plaintiff's working conditions by, among other ways, harassing behavior on account of Plaintiff's race, denying her opportunities for promotion and career development in comparison to Caucasian employees; and failing to take prompt remedial action to stop the racially based discriminatory treatment to which Plaintiff was being subjected.

42. In addition, Defendant CMI terminated Plaintiff's employment because of her race, in violation of the FCRA.

43. Plaintiff was injured and negatively affected because of this discriminatory work environment, and because of her discriminatory termination.

44. The acts and omissions committed by Defendant CMI were willful, wanton, intentional, conscious and malicious and in deliberate disregard of Plaintiff's civil rights.

45. As a direct and proximate result of Defendant CMI's actions, Plaintiff has suffered lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, embarrassment, and health-related problems justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory, consequential and punitive damages against Defendant CMI.

## COUNT IV
### (Claims Against Defendants for Violation of 42 U.S.C. §1981 – Retaliation)

46.     Plaintiff incorporates by reference herein and realleges the allegations in Paragraphs 1 – 23 above as though set forth fully herein.

47.     Plaintiff Washington engaged in protected activity by objecting to race discrimination in the workplace at Defendants' workplace at CareerSource Flagler Volusia, including complaints to Defendants' representatives who were also otherwise informed of Plaintiff's complaints of discrimination. At all times relevant herein, Plaintiff Washington held a reasonable good faith belief that her treatment in the workplace by Defendants was discriminatory conduct on account of her race.

48.     After Plaintiff Washington engaged in protected activity, and because of her engagement in that activity, Defendants took adverse action against the Plaintiff and unlawfully retaliated against Plaintiff in violation of 42 U.S.C. § 1981 by wrongfully terminating Plaintiff's employment due to her objections and complaints about unlawful discrimination on account of race and color and not rehiring Plaintiff.

49.     The acts and omissions committed by Defendants were willful, malicious and in reckless disregard of Plaintiff's federally protected civil rights.

50.     As a direct and proximate result of Defendants' retaliatory actions, Plaintiff has suffered and will continue to suffer lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, and compensatory damages against Defendants.

**WHEREFORE**, Plaintiff, Betty Washington, respectfully requests that this Honorable Court grant the following relief:

(a) Enter judgment on behalf of Plaintiff and against Defendants on all counts;

(b) Award Plaintiff back pay including lost benefits and front pay under Section 1981, Title VII and the FCRA;

(c) Award Plaintiff compensatory damages under Section 1981, Title VII and the FCRA in an amount to be determined by the jury;

(d) Order Defendants to reinstate Plaintiff and other declaratory relief;

(e) Award Plaintiff punitive damages for Defendants' willful violations of Section 1981, Title VII and the FCRA;

(f) Award Plaintiff reasonable attorneys' fees, court costs, expenses, pre-judgment interest, and post-judgment interest; and

(g) Such other or further relief as the Court deems appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues so triable as a matter of right.

Dated: December 16, 2020

Respectfully Submitted,

*/s/Neil L. Henrichsen*
Neil Henrichsen
Fla. Bar No. 0111503
Colin A. Thakkar
Fla. Bar No. 0010242
HENRICHSEN LAW GROUP, PLLC
301 W. Bay St., 14th Floor
Jacksonville, FL 32202
(904) 381-8183
(904) 212-2800 (Facsimile)
nhenrichsen@hslawyers.com
cthakkar@hslawyers.com
service@hslawyers.com